House of Eire, Inc., et al. * v. Commissioner. House of Eire v. Comm'r
Docket Nos. 76656-76661.
United States Tax Court
T.C. Memo 1961-142; 1961 Tax Ct. Memo LEXIS 204; 20 T.C.M. (CCH) 713; T.C.M. (RIA) 61142; May 19, 1961
*204 Arthur Gottlieb, Esq., 209 Washington St., Boston, Mass., for the petitioners. Raymond T. Mahon, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: The respondent determined deficiencies in petitioners' taxes and additions to the tax as follows: Docket
Taxable
Kind
No.
Petitioner
Year
of Tax
Deficiency
76656
House of Eire, Inc.
6/30/46
Income
$1,195.65
76656
House of Eire, Inc.
6/30/46
Declared Value
Excess Profits
787.61
76656
House of Eire, Inc.
6/30/47
Income
4,074.42
76656
House of Eire, Inc.
6/30/48
Income
3,653.65
76656
House of Eire, Inc.
6/30/49
Income
2,216.89
76656
House of Eire, Inc.
6/30/50
Income
4,648.57
76656
House of Eire, Inc.
Taxable
Period
7/1/50.
12/31/50
Income
1,558.85
76656
House of Eire, Inc.
12/31/51
Income
1,357.75
76656
House of Eire, Inc.
12/31/52
Income
3,891.10
76657
O'Hagan & McLaughlin,
Inc.
1941
Income
655.44
76657
O'Hagan & McLaughlin,
Inc.
1941
Declared Value
Excess Profits
474.64
76657
O'Hagan & McLaughlin,
Inc.
1942
Income
1,306.73
76657
O'Hagan & McLaughlin,
Inc.
1942
Declared Value
Excess Profits
1,582.00
76657
O'Hagan & McLaughlin,
Inc.
1942
Excess Profits
4,673.45
76657
O'Hagan & McLaughlin,
Inc.
1943
Income
1,306.73
76657
O'Hagan & McLaughlin,
Inc.
1943
Declared Value
Excess Profits
1,784.25
76657
O'Hagan & McLaughlin,
Inc.
1943
Excess Profits
5,870.38
76657
O'Hagan & McLaughlin,
Inc.
1944
Income
2,656.73
76657
O'Hagan & McLaughlin,
Inc.
1944
Declared Value
Excess Profits
1,931.94
76657
O'Hagan & McLaughlin,
Inc.
1944
Excess Profits
2,132.25
76657
O'Hagan & McLaughlin,
Inc.
1945
Income
2,656.73
76657
O'Hagan & McLaughlin,
Inc.
1945
Declared Value
Excess Profits
1,682.21
76657
O'Hagan & McLaughlin,
Inc.
1945
Excess Profits
728.20
76657
O'Hagan and McLaugh-
lin, Inc.
1946
Income
$4,157.46
76657
O'Hagan and McLaugh-
lin, Inc.
1947
Income
406.20
76657
O'Hagan and McLaugh-
lin, Inc.
1948
Income
1,869.02
76657
O'Hagan and McLaugh-
lin, Inc.
1949
Income
4,478.03
76657
O'Hagan and McLaugh-
lin, Inc.
1950
Income
1,204.81
76657
O'Hagan and McLaugh-
lin, Inc.
1951
Income
2,600.62
76657
O'Hagan and McLaugh-
lin, Inc.
1952
Income
2,588.73
76658
Michael O'Hagan
1941
Income
96.63
76658
Michael O'Hagan
1942
Income
415.36
76658
Michael O'Hagan
1944
Income
816.28
76658
Michael O'Hagan
1946
Income
3,104.57
76658
Michael O'Hagan
1947
Income
2,590.56
76659
Est. of Agnes O'Hagan,
Dec'd
1948
Income
1,456.76
76659
Est. of Agnes O'Hagan,
Dec'd
1949
Income
2,410.43
76659
Est. of Agnes O'Hagan,
Dec'd
1950
Income
629.82
76659
Est. of Agnes O'Hagan,
Dec'd
1951
Income
626.84
76659
Est. of Agnes O'Hagan,
Dec'd
1952
Income
1,058.58
76660
John McLaughlin
1943
Income
1,010.92
76660
John McLaughlin
1944
Income
755.27
76660
John McLaughlin
1946
Income
2,255.86
76660
John McLaughlin
1947
Income
2,450.21
76661
John and Bertha Mc-
Laughlin
1948
Income
1,086.52
76661
John and Bertha Mc-
Laughlin
1949
Income
2,865.66
76661
John and Bertha Mc-
Laughlin
1950
Income
1,148.68
76661
John and Bertha Mc-
Laughlin
1951
Income
899.08
76661
John and Bertha Mc-
Laughlin
1952
Income
1,154.90
*205 Additions to Tax, I.R.C. of 1939
Docket
Sec.
Sec.
Sec. 294
Sec. 294
No.
291(a)
293(b)
(d)(1)(A)
(d)(2)
76656
$ 298.91
$ 597.82
76656
196.90
393.80
76656
1,018.60
2,037.21
76656
913.41
1,826.82
76656
554.22
1,108.44
76656
1,162.14
2,324.28
76656
389.71
779.42
76656
678.87
76656
972.77
1,945.55
76657
163.86
327.72
76657
118.66
237.32
76657
326.68
653.36
76657
395.50
791.00
76657
1,168.36
2,336.72
76657
326.68
653.36
76657
446.06
892.12
76657
1,467.59
2,935.19
76657
664.18
1,328.36
76657
482.98
965.97
76657
553.06
1,066.12
76657
664.18
1,328.36
76657
420.55
841.10
76657
182.05
364.10
76657
$1,039.36
$2,078.73
76657
101.55
203.10
76657
467.26
934.51
76657
1,119.51
2,239.01
76657
301.20
602.40
76657
650.15
1,300.31
76657
647.18
1,294.36
76658
48.31
76658
207.68
76658
408.14
76658
1,552.28
76658
1,295.28
76659
728.38
76659
1,205.21
76659
314.91
$ 55.96
$ 33.58
76659
313.42
62.68
37.61
76659
529.29
105.84
63.51
76660
505.46
76660
377.63
76660
563.96
1,127.93
76660
1,225.10
76661
543.26
76661
1,432.83
76661
574.34
114.86
68.92
76661
449.54
89.92
53.94
76661
288.72
557.45
115.48
69.29
*206 By amended answer respondent claims increased deficiencies in income tax and additions to tax from certain of petitioners as follows: Deficiency
Claimed
by
Docket
Taxable
Kind
Amended
No.
Petitioner
Year
of Tax
Answer
76658
Michael O'Hagan
1941
Income
$ 100.45
76658
Michael O'Hagan
1942
Income
741.51
76658
Michael O'Hagan
1947
Income
3,173.68
76659
Est. of Agnes O'Hagan,
Dec'd
1948
Income
2,204.16
76659
Est. of Agnes O'Hagan,
Dec'd
1952
Income
1,089.68
76661
John and Bertha Mc-
Laughlin
1948
Income
1,129.86
76661
John and Bertha Mc-
Laughlin
1952
Income
1,558.08
Additions to Tax, I.R.C. of 1939,
Claimed by Amended Answer
Docket
Sec.
Sec.
Sec. 294
Sec. 294
No.
291(a)
293(b)
(d)(1)(A)
(d)(2)
76658
$ 50.23
76658
370.76
76658
1,586.84
76659
1,102.08
76659
544.84
$ 98.07
76661
564.93
76661
$ 389.52
779.04
140.22
The issues for decision are: 1. Whether all or any part of the deficiency is due to fraud with intent to evade tax in the case of each petitioner, both corporate and individual, and for *207 each of the taxable years involved. 2. Whether the failure of the two corporate petitioners for each of the years involved (except the year 1951 with respect to the House of Eire, Inc.) to file income and declared value excess profits tax returns, and excess profits tax returns was due to willful neglect, and whether the failure of the individual petitioner, John McLaughlin, to file income tax returns for the taxable years 1946 and 1952 was due to willful neglect. 3. Whether the individual petitioners, Michael O'Hagan and John McLaughlin, are liable for additions to the tax for failure to file declarations of estimated tax for the taxable years 1950, 1951, and 1952. 4. Whether the assessment of deficiencies in income and additions to the tax against Michael O'Hagan for the taxable years 1941, 1942, 1944, 1946, 1947, 1948, 1949, and 1950 and against John McLaughlin for the taxable years 1943, 1944, 1947, 1948, 1949, and 1950 is barred by the statute of limitations. Certain of the issues raised in the petition and in the amended answer have been conceded by each party. Findings of Fact Petitioner O'Hagan and McLaughlin, Inc., failed to file income and declared value excess *208 profits tax returns for the taxable years 1941 to 1945, inclusive; excess profits tax returns for the taxable years 1942 to 1945, inclusive; and income tax returns for the taxable years 1946 to 1952, inclusive, as it was required by law to do. Petitioner House of Eire, Inc., failed to file income tax returns for the taxable years ended June 30, 1947, to June 30, 1950, inclusive; for the taxable period July 1, 1950, to December 31, 1950, inclusive; and for the taxable year 1952, as it was required by law to do. Petitioner House of Eire, Inc., failed to file an income and declared value excess profits tax return for the taxable year ended June 30, 1946, as it was required by law to do. The 1951 income tax return of House of Eire, Inc., was filed with the officer of the then collector of internal revenue for the district of Massachusetts. The individual income tax returns of petitioner Michael O'Hagan (hereinafter called O'Hagan) for the taxable years 1941, 1942, 1944 and 1946 to 1952, inclusive, were filed with the office of the then collector of internal revenue for the district of Massachusetts. The individual income tax returns of petitioner John McLaughlin (hereinafter called *209 McLaughlin) for the taxable years 1943, 1944 and 1947 to 1951, inclusive, were filed with the office of the then collector of internal revenue for the district of Massachusetts. McLaughlin failed to file income tax returns for the taxable years 1946 and 1952 as he was required by law to do. In 1939 O'Hagan and McLaughlin formed an equal partnership for the purpose of operating a tavern at 1713 Washington Street, Boston, Massachusetts. In February 1941, the business was incorporated under the name of O'Hagan and McLaughlin, Inc. Ten shares of stock with a par value of $100 each were issued, with O'Hagan receiving 5 shares and McLaughlin receiving 1 share. The remaining 4 shares were issued to Bertha McLaughlin, the wife of petitioner John McLaughlin. Bertha McLaughlin held her stock in O'Hagan and McLaughlin, Inc., as nominee for her husband. O'Hagan and McLaughlin were equal owners of O'Hagan and McLaughlin, Inc. The amount of capital contributed to O'Hagan and McLaughlin, Inc., in exchange for its stock was $2,400 and this amount constitutes the total basis of O'Hagan and McLaughlin for their stock in the corporation. In October 1945, O'Hagan and McLaughlin purchased all the *210 capital stock (consisting of 150 shares) of a tavern known as House of Eire, Inc. The purchase price of the stock was $18,000, of which amount $9,000 was paid by O'Hagan and $9,000 was paid by McLaughlin. As a result of this transaction, O'Hagan received 75 shares of the corporate stock and McLaughlin received 1 share. The remaining 74 shares were issued to Bertha McLaughlin, the wife of petitioner John McLaughlin. The stock of House of Eire, Inc., which was in the name of Bertha McLaughlin was really owned by petitioner John McLaughlin. As a result, he and O'Hagan were equal owners of the House of Eire, Inc. McLaughlin's duties at O'Hagan and McLaughlin, Inc., consisted of ordering supplies, signing checks, and supervising all the activities as general manager. His duties at the House of Eire, Inc., were substantially the same. The daily receipts for both O'Hagan and McLaughlin, Inc., and for House of Eire, Inc., were taken from the cash register tapes one or two times daily and were recorded in small notebooks. These entries were made on occasion by McLaughlin and on occasion by the bartender on duty. In the case of O'Hagan and McLaughlin, Inc., O'Hagan also took some of the *211 readings and made some of the entries in the notebook. The information in the notebooks was then transmitted to the accountant for entry into the regular or permanent set of books. Respondent's agents first requested the notebooks in which were recorded the daily receipts of O'Hagan and McLaughlin, Inc. and House of Eire, Inc., the cash register tapes and the permanent records of the corporation in 1953. The only records with which they were furnished were the permanent records for 1946 and subsequent years. The notebooks in which were recorded the daily receipts of O'Hagan and McLaughlin, Inc. and House of Eire, Inc., had been destroyed for years prior to 1953. The cash register tapes from which the daily notations of gross receipts were made in the notebooks were destroyed daily. The respondent's agents were never furnished with any of the permanent records of the corporations for years prior to 1946. The gross receipts of House of Eire, Inc., for the taxable years 1947 to 1952, inclusive, were as follows: Taxable Year
Gross Receipts
1947
$84,906.23
1948
90,370.99
1949
76,137.88
1950
86,663.32
1951
88,624.40
1952
94,820.65
The gross receipts of *212 O'Hagan and McLaughlin, Inc., for the taxable years 1941, 1942, 1944, 1945 and 1947 to 1952, inclusive were as follows: Taxable
Year
Gross Receipts
1941
$29,948.55
1942
44,728.06
1944
57,845.15
1945
61,536.20
1947
63,147.84
1948
60,796.15
1949
66,433.91
1950
60,039.69
1951
58,610.89
1952
80,322.83
The corporate checking account for O'Hagan and McLaughlin, Inc., was maintained at the First National Bank of Boston, while the corporate checking account for the House of Eire, Inc., was maintained at the National Rockland Bank of Boston. Neither corporation ever had a bank account in any name other than the corporate name. Two or three times per week McLaughlin deposited in the corporate checking accounts a sufficient amount of money out of the corporate gross receipts to enable the two corporations to meet their expenses. The excess of the gross receipts of each corporation was then deposited by McLaughlin in various savings accounts which were maintained in the individual names of O'Hagan, McLaughlin, and their wives. This money deposited in the various savings accounts was always deposited in cash. O'Hagan received the following distributions *213 from O'Hagan and McLaughlin, Inc., and from House of Eire, Inc., in the years indicated: Distributions
Distributions
Received
Received
from O'Hagan
from House
Taxable
and McLaugh-
of Eire,
Year
lin, Inc.
Inc.
1941
$1,855.50
1942
5,912.00
1944
4,955.00
1946
8,471.53
$ 4,662.47
1947
3,256.64
11,223.52
1948
6,073.73
6,169.96
1949
8,883.45
6,161.67
1950
1,981.48
3,653.52
1951
4,086.58
693.42
1952
2,453.34
4,951.66
No stock was surrendered by O'Hagan in exchange for these distributions. McLaughlin received the following distributions from O'Hagan and McLaughlin, Inc., and from House of Eire, Inc., in the years indicated: Distributions
Distributions
Received
Received
from O'Hagan
from House
Taxable
and McLaugh-
of Eire,
Year
lin, Inc.
Inc.
1943
$ 4,216.24
1944
7,044.35
1946
6,903.51
$ 4,620.49
1947
1,403.36
13,646.80
1948
6,073.73
7,181.60
1949
11,325.35
10,106.66
1950
1,027.75
12,258.18
1951
6,699.71
2,315.27
1952
855.73
11,349.71
No stock was surrendered by John McLaughlin or Bertha McLaughlin in exchange for these distributions. In addition to the amounts *214 above shown, McLaughlin received a salary in the amount of $2,000 from O'Hagan and McLaughlin, Inc., in the taxable year 1946 and he received a salary in the amount of $3,120 from House of Eire, Inc., in the taxable year 1946. In the taxable year 1952 McLaughlin received combined wages from O'Hagan and McLaughlin, Inc., and from House of Eire, Inc., in the amount of $3,900. The books and records of O'Hagan and McLaughlin, Inc., and House of Eire, Inc., did not reflect any of the withdrawals made by O'Hagan or McLaughlin from those corporations other than withdrawals which they made for salary each year. Savings Account No. XX7525 at the Eliot Savings Bank in the joint names of petitioners John and Bertha McLaughlin contained deposits in the approximate amount of $5,000 made during 1951. The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc., and House of Eire, Inc. Savings Account No. XX5968 at the Boston Penny Savings Bank in the joint names of McLaughlin and O'Hagan contained deposits in the approximate amount of $16,000 made during the years 1944 to 1946, inclusive. The money deposited in this account consisted of withdrawals *215 made from O'Hagan and McLaughlin, Inc. Savings Account No. XX5129 at the Eliot Savings Bank in the joint names of John O'Donell and Michael Hughes was owned by McLaughlin and O'Hagan, since McLaughlin was the O'Donell referred to and O'Hagan was the Hughes referred to. This account contained deposits in the approximate amount of $30,000 made during the years 1941 to 1946, inclusive. The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc. Savings Account No. X5087 at the First National Bank of Boston in the joint names of McLaughlin and O'Hagan contained deposits in the approximate amount of $5,000 made during the years 1946 and 1947. The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc. Savings Account No. XX5322 at the Institution for Savings in Roxbury in the joint names of McLaughlin and O'Hagan contained deposits in the approximate amount of $9,950 made during the year 1949. The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc., and House of Eire, Inc. Savings Account No. XX6326 at the Institution for Savings in Roxbury in the joint names *216 of Michael and Agnes O'Hagan contained deposits in the approximate amount of $15,000 made during the years 1949 to 1952, inclusive. The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc., and House of Eire, Inc. Savings Account No. XX6327 at the Institution for Savings in Roxbury in the joint names of John and Bertha McLaughlin contained deposits in the approximate amount of $20,000 made during the years 1949 to 1952, inclusive. The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc., and House of Eire, Inc. Savings Account No. XXXXat the Lincoln Savings Bank in the joint names of McLaughlin and O'Hagan contained deposits in the approximate amount of $10,000 made during the years 1947 to 1949, inclusive. The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc., and House of Eire, Inc. Savings Account No. X1361 at the Lincoln Savings Bank in the joint names of Bertha and John McLaughlin contained deposits in the approximate amount of $4,000 made during 1950. The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, *217 Inc., and House of Eire, Inc. Savings Account No. XX1286 at the National Shawmut Bank in the joint names of John and Bertha McLaughlin contained deposits in the approximate amount of $8,500 made during the years 1945, to 1952, inclusive. McLaughlin had no source of income other than that which he received from the corporations and the interest on his savings accounts. Savings Account No. XX6385 at the National Shawmut Bank in the joint names of McLaughlin and O'Hagan contained deposits in the approximate amount of $27,000 made during the years 1947 to 1951, inclusive. The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc., and from House of Eire, Inc. Savings Account No. XX0575 at the National Shawmut Bank in the name of McLaughlin contained deposits in the approximate amount of $3,600 made during the years 1942 to 1944, inclusive. The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc. Savings Account No. X3657 at the National Rockland Bank in the joint names of McLaughlin and O'Hagan contained deposits in the approximate amount of $15,000 made during the years 1947 to 1949, inclusive. *218 The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc., and House of Eire, Inc. Savings Account No. X6773 at the First Federal Savings & Loan Association in the joint names of John and Bertha McLaughlin contained deposits in the approximate amount of $3,600 made in 1944. The deposits in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc. The personal checking account of McLaughlin maintained at the National Shawmut Bank contained deposits in excess of $30,000 made during the years 1946 to 1952, inclusive. The money deposited in this account consisted of withdrawals made from O'Hagan and McLaughlin, Inc., and House of Eire, Inc. On December 14, 1948, O'Hagan and McLaughlin withdrew $18,000 from Joint Savings Account No. XX6385 at the National Shawmut Bank and used it to purchase the new premises now occupied by O'Hagan and McLaughlin, Inc., at 1724 Washington Street, Boston, Massachusetts. Title to this property was taken in the individual names of Michael O'Hagan and John McLaughlin. In the taxable years 1949 and 1950 McLaughlin and O'Hagan spent about $25,000 renovating the new premises occupied by O'Hagan *219 and McLaughlin, Inc. Part of this money came from the prior operations of O'Hagan and McLaughlin, Inc., and House of Eire, Inc. On October 19, 1945, McLaughlin and O'Hagan withdrew $8,000 from their Joint Savings Account No. XX5968 at the Boston Penny Savings Bank and $10,000 from their Joint Savings Account No. XX5129 at the Eliot Savings Bank. These withdrawals in the total amount of $18,000 were used by McLaughlin and O'Hagan to acquire the capital stock of House of Eire, Inc. Around 1949 or 1950 McLaughlin bought $20,000 worth of shares in the Meeting House Hill Cooperative Bank and the money used to purchase the stock came out of House of Eire, Inc., and O'Hagan and McLaughlin, Inc. Around 1948 or prior thereto, O'Hagan purchased $20,000 worth of shares in the Meeting House Hill Cooperative Bank and the money used to purchase this stock came out of O'Hagan and McLaughlin, Inc. In October 1949, Savings Account No. XX5129 at the Eliot Savings Bank, Savings Account No. X5087 at the First National Bank of Boston, Savings Account No. XX5322 at the Institution for Savings in Roxbury, Savings Account No. XXXX at the Lincoln Savings Bank, and Savings Account No.X3657 at the National *220 Rockland Bank, all jointly owned by McLaughlin and O'Hagan, were closed out and the proceeds withdrawn in the amount of $53,000 were divided evenly between McLaughlin and O'Hagan. From 1940 until 1949 an accountant named Skinner was employed to do the bookkeeping work for O'Hagan and McLaughlin, Inc., and House of Eire, Inc. Skinner had been engaged as a result of some question in connection with social security taxes. Skinner worked only about 3 hours per month and was paid a salary of $20 per month. Skinner prepared Federal tax returns for O'Hagan and McLaughlin, Inc., and House of Eire, Inc., but these returns were not filed. On the basis of information provided to him, Skinner also prepared the individual income tax returns of McLaughlin and O'Hagan but the return of McLaughlin for the year 1946 was not filed. From the time Skinner ceased to do the bookkeeping work in 1949 until the end of 1952, this work was done by an accountant named Dopkeen, McLaughlin's Sons, John and Jerry, and an accountant named Moynihan. O'Hagan never told Skinner, Dopkeen, Moynihan, or any of the people who made out his income tax returns about the existence of his savings accounts which contained *221 the withdrawals made from O'Hagan and McLaughlin, Inc., and House of Eire, Inc. McLaughlin never told Dopkeen, Moynihan, or his sons about the existence of his savings accounts which contained the withdrawals made from O'Hagan and McLaughlin, Inc., and House of Eire, Inc. McLaughlin was unable to state whether or not he ever told Skinner about the existence of these savings accounts. When questioned by respondent's agents in 1953 McLaughlin informed them of some of the bank accounts maintained by him and by him jointly with O'Hagan but did not inform them of all such accounts. With the exception of the 1951 income tax return filed by McLaughlin, none of the income tax returns filed by either O'Hagan or McLaughlin shows a signature in the space designated for the signature of person (other than taxpayer or agent) preparing the return. McLaughlin received the following interest on bank accounts in the years indicated: Taxable
Year
Interest
1943
$ 45.98
1944
139.65
1946
178.71
1947
237.68
1948
348.75
1949
343.10
1950
678.75
1951
877.77
1952
622.66
O'Hagan received the following interest on bank accounts in the years indicated: Taxable
Year
Interest
1941
$ 27.62
1942
42.79
1944
93.93
1946
106.85
1947
256.24
1948
340.00
1949
339.92
1950
608.95
1951
698.57
1952
471.29
*222 The corrected net income of petitioner House of Eire, Inc., is as follows, in the years indicated: Corrected
Taxable Year Ended
Net Income
June 30, 1946
$ 5,966.76
June 30, 1947
18,149.63
June 30, 1948
16,320.25
June 30, 1949
10,073.44
June 30, 1950
20,594.26
Taxable Period July 1, 1950
to December 31, 1950
$ 6,235.41
December 31, 1951
4,722.62
December 31, 1952
12,970.35 Petitioner House of Eire, Inc., failed to file returns disclosing any of the above-described net income, with the exception of 1951 when a return was filed disclosing a net loss of $220.58. Petitioner has agreed that the deficiencies in income tax and the net income upon which such deficiencies are based have been correctly determined. The corrected net income of petitioner, O'Hagan and McLaughlin, Inc., is as follows in the years indicated: Taxable
Corrected
Year
Net Income
1941
$ 3,595.77
1942
11,984.86
1943
13,517.03
1944
14,635.94
1945
12,744.05
1946
18,510.73
1947
1,934.28
1948
8,560.97
1949
19,904.45
1950
5,238.32
1951
9,045.62
1952
8,269.11 Petitioner O'Hagan and McLaughlin, Inc., failed to file returns disclosing any of the *223 above-described net income. Petitioner has agreed that the deficiencies in income tax and the net income upon which such deficiencies are based have been correctly determined. The deficiencies in income tax in the case of petitioner John McLaughlin and the corrected net income upon which the deficiencies are based, together with the reported income, are as follows in the years indicated: Taxable
Reported
Corrected
Income Tax
Year
Income
Net Income
Deficiency
1943
$5,070.99
$ 8,876.49
$ 978.33
1943
5,620.00 9,332.24 [1]
1944
3,680.00
6,485.11
492.57
1946
None 13,563.42
2,043.98
1947
4,950.00
12,419.84
1,696.65
1948
4,925.00
12,405.38
1,129.86
1949
3,975.00
19,789.53
2,826.04
1950
3,900.00
12,075.43
1,111.50
1951
4,160.00
8,708.58
674.96
1952
None [2]
12,123.94
1,558.08
Petitioner admitted that the deficiencies in income tax, as revised, and the corrected net income upon which the deficiencies are based, have been correctly determined. The deficiencies in income tax in the case of petitioner Michael O'Hagan and the corrected net income *224 upon which such deficiencies are based, together with the reported income, are as follows in the years indicated: Taxable
Reported
Corrected
Income Tax
Year
Income
Net Income
Deficiency
1941
$1,756.61
$ 2,785.93
$ 100.45
1942
2,080.00
5,563.49
741.51
1944
3,680.00
5,802.39
609.60
1946
3,120.00
13,185.15
2,731.08
1947
3,900.00
14,639.84
3,173.68
1948
3,900.00
14,435.46
2,204.16
1949
3,975.00
15,249.76
2,226.91
1950
3,900.00
6,361.01
480.42
1951
3,900.00
6,291.96
549.16
1952
3,900.00
9,019.79
1,089.68
Petitioner admitted that the deficiencies in income tax, as revised, and the corrected net income upon which the deficiencies are based, have been correctly determined. McLaughlin was born in Ireland in 1902. He attended school through the third grade and then began working on a farm. He did farm work in Ireland until 1923 when he came to this country. After working in a harness shop for several years, he worked in a garage which he later purchased. He saved money while operating the garage with which his interest in the cafe which was later incorporated as O'Hagan and McLaughlin, Inc., was purchased. O'Hagan was *225 born in Ireland in about 1893. He attended school to the third or fourth grade and then began to work on his father's farm. He came to this country in 1923 and shortly thereafter began working in a garage. He began working in McLaughlin's garage during the depression. He saved the money while working in these garages with which he purchased his interest in the cafe which was later incorporated as O'Hagan and McLaughlin, Inc. The stipulated facts are found accordingly. Ultimate Findings of Fact Petitioner O'Hagan and McLaughlin, Inc., failed to file income tax returns for the taxable years 1946 to 1952, inclusive; income and declared value excess profits tax returns for the taxable years 1941 to 1945, inclusive; and excess profits tax returns for the taxable years 1942 to 1945, inclusive, as it was required by law to do, and failure to file was due to willful neglect. Petitioner House of Eire, Inc., failed to file income tax returns for the taxable years ended June 30, 1947, to June 30, 1950, inclusive; for the taxable period July 1, 1950, to December 31, 1950; and for the taxable year 1952, as it was required by law to do. Petitioner House of Eire, Inc., failed to file an income *226 and declared value excess profits tax return for the taxable year ended June 30, 1946, as it was required by law to do. Such failure to file was due to willful neglect. Petitioner John McLaughlin failed to file income tax returns for the taxable years 1946 and 1952, as he was required by law to do, and failure to file was due to willful neglect. Petitioner John McLaughlin failed to file declarations of estimated tax for the taxable years 1950 to 1952, inclusive, and such failure was due to willful neglect. Petitioner Michael O'Hagan failed to file declarations of estimated tax for the taxable years 1950 to 1952, inclusive, and such failure was due to willful neglect. Part of the deficiency due from petitioners John McLaughlin and Michael O'Hagan for each of the taxable years here involved is due to fraud with intent to evade tax. No part of the deficiency due from petitioners O'Hagan and McLaughlin, Inc., and House of Eire, Inc., for any of the taxable years here involved is due to fraud with intent to evade tax. The statute of limitations is not a bar to the assessment of the deficiencies in income tax and the additions to the tax against Michael O'Hagan for the taxable *227 years 1941, 1942, 1944, and 1946 to 1950, inclusive. The statute of limitations is not a bar to the assessment of the deficiencies in income tax and the additions to the tax against John McLaughlin for the taxable years 1943, 1944, and 1947 to 1950, inclusive. Opinion The first issue involves the question of fraud, both with respect to the corporate and individual petitioners. In determining the question of fraud, in the case of the two corporate petitioners, we must look to the actions and intent of the two stockholders and officers, O'Hagan and McLaughlin. No returns were filed by the corporations with the exception of a return for the House of Eire, Inc., for the taxable year 1951 in which the net income was grossly understated. O'Hagan and McLaughlin attempted to explain the failure of the corporations to file returns by stating that they relied on the bookkeeper, Skinner, to file the returns and did not know why he had not filed them. The failure over a period of many years to ascertain that Skinner was not filing corporate returns and the total lack of explanation of why the accountants employed after Skinner left did not file corporate returns, shows gross negligence *228 but evidence of negligence is not sufficient to sustain an allegation of fraud. . O'Hagan and McLaughlin stated that they considered the money earned by the corporate businesses to be their money. The business success of O'Hagan and McLaughlin and the fact that they showed some understanding of the advantages of incorporating the business of O'Hagan and McLaughlin, Inc., arouses suspicion that their knowledge of the distinction between the funds of the corporate businesses and their own funds may have been greater than their testimony indicates, but the burden of proving fraud by clear and convincing evidence rests on respondent, and mere suspicion cannot substitute for such proof. If, in fact, O'Hagan and McLaughlin considered that the money they withdrew from the corporation was not part of the corporate profits, there could have been no fraudulent intent to evade taxes of the corporations since these corporations would have had no taxable income. Considering the evidence as a whole, we find it insufficient to sustain the imposition upon the corporations of the additions to tax for fraud. Cf. , *229 and . Each of the individual petitioners understated his income over a period of years [3] in amounts ranging to over 400 percent. The major reason for the understatements in each instance was withdrawals from the corporations, House of Eire, Inc., or O'Hagan and McLaughlin, Inc. Each of the petitioners, although disclaiming knowledge of the meaning of the word "dividend," stated that he considered the money withdrawn from the corporations to be his earnings. Understatements of income of the proportion here shown over a long period of years, where the explanation for such omissions is patently weak and incredible, is a strong indication of fraud. , and . Petitioners seek to explain that failure to report the withdrawals from the corporations by asserting that they are totally ignorant of business and tax matters. The record shows that the petitioners had little formal education but they did possess *230 business acumen. They owned the stock of two corporations which they managed and operated at a profit; they invested in stock of a bank; and they sufficiently understood the costs of the businesses to be able to place in the corporate bank accounts sufficient moneys to pay the business expenses and to place the balance in their own accounts. They understood their respective interests in the corporation sufficiently to divide between themselves the amounts withdrawn from the corporations. McLaughlin testified that he did not know that he was supposed to pay an income tax on money he made and O'Hagan testified that he did not know of the existence of the income tax. This testimony is incredible in the light of the other statements made by these petitioners and the nature of the businesses operated by them. O'Hagan referred to giving a slip to Skinner to make out his tax return and to knowing what "exemptions" were. McLaughlin referred to first obtaining Skinner's services when he had some "trouble" with social security. These men had employees in their businesses to whom wages were paid. Further, the businesses in which these men worked were cafes and bars, and in the course of this *231 work they referred to other information that came to them that makes it impossible to believe that they were not aware that a Federal income tax was payable on money they considered as their "hard earned money." In attempted explanation of the bank account placed in the fictitious names of John O'Donell and Michael Hughes, both petitioners stated that there had been a fight in "the store" and someone had suggested to them that a suit might be instituted and their funds be tied up and for this reason the bank account in the fictitious names had been opened. McLaughlin also testified that someone had told him that it would be advantageous to incorporate the bar and restaurant business which he and O'Hagan were then running to limit their personal liability and for that reason the corporation of O'Hagan and McLaughlin, Inc., was formed. When the stock of Christy's Bar and Grill (the previous name of the corporation, House of Eire, Inc.,) was for sale, petitioner consulted an attorney, Chapman, as to how the stock could be purchased. McLaughlin testified that he had known Chapman since around 1935. Testimony that during a period of 15 years of operating a cafe and bar, O'Hagan and *232 McLaughlin had not heard of income tax is unworthy of belief. It is also incredible that men who consulted accountants and attorneys on other matters would not have had sufficient business knowledge to at least inform the persons preparing their income tax returns of their withdrawals from the corporations and inquire whether the amounts were taxable, unless it was their intent to conceal this information to evade any tax that might be due on such withdrawals. On the basis of all the evidence of record, we believe respondent has sustained his burden of proving that part of the deficiencies in the income tax of O'Hagan for each of the years 1941 through 1952 and of McLaughlin for each of the years 1943 through 1952 was due to fraud with intent to evade the payment of income tax. The next question concerns the additions to the tax for failure of the corporate petitioners to make and file returns as required by law for all of the years involved except for the year 1951 in the case of House of Eire, Inc., the failure of McLaughlin to file returns for the years 1946 and 1952, and the failure of O'Hagan and McLaughlin each to file declarations of estimated tax for the years 1950, 1951, *233 and 1952. The burden of establishing that the failure to file returns and to file declarations of estimated tax was due to reasonable cause and not to negligence is on petitioners. . The explanation given by petitioners for failure to file all of the returns here involved is that they relied on Skinner and petitioners do not know why he did not file the returns. Reliance upon an accountant is a defense to the imposition of addition to the tax for failure to file returns only if it appears that the accountant was qualified to advise the taxpayer in matters pertaining to taxation and the taxpayers made a full disclosure of all relevant facts to the accountant. ; ; and . There is no evidence in this case to establish that Skinner was qualified to advise petitioners in tax matters, nor is there any explanation as to why returns were not filed for 1950, 1951, and 1952 (with the exception of the House of Eire for 1951) when other accountants were handling petitioners' books. There is some explanation *234 in the record that petitioners were unable to locate Skinner and that respondent's agent located him on his own initiative in 1953 when he was investigating petitioner's tax liability, but the record contains no explanation of why the other persons who maintained petitioners' books, including two of McLaughlin's sons, did not testify as to why returns were not filed. The evidence is also clear that McLaughlin and O'Hagan did not disclose to the accountants the existence of the various bank accounts maintained in their names or in the fictitious names of O'Donell and Hughes and that the permanent records of the corporations did not record in full the receipts of the corporations or show the withdrawals by O'Hagan and McLaughlin. The record as a whole is totally insufficient to show reasonable cause for failure of the corporate petitioners and McLaughlin to file Federal tax returns for the years in which no such returns were filed and the failure of O'Hagan and McLaughlin each to file declarations of estimated tax for the years 1950, 1951, and 1952. We sustain respondent with respect to the imposition of the addition to the tax for failure to file such returns and declarations of estimated *235 tax. The returns of O'Hagan for the years 1941 through 1944 and 1946 through 1950 and of McLaughlin for the years 1943, 1944, and 1947 through 1950 were false and fraudulent with intent to evade tax, and, therefore, the assessment and collection of the deficiencies for each of these years is not barred by the statute of limitations. Decision will be entered under Rule 50. Footnotes
*. Proceedings of the following petitioners are consolidated herewith: O'Hagan and McLaughlin, Inc., Docket No. 76657; Michael O'Hagan, Docket No. 76658; Estate of Agnes O'Hagan, Deceased, Michael O'Hagan, Executor, and Michael O'Hagan, Surviving Spouse, Docket No. 76659; John McLaughlin, Docket No. 76660; and John McLaughlin and Bertha McLaughlin, Docket No. 76661.↩
1. Victory Tax Net Income. ↩
2. No returns filed in 1946 and 1952.↩
3. In the case of O'Hagan a period of 11 years and in the case of McLaughlin a period of 9 years, in 2 of which no returns were filed.↩